134 F.3d 379
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Floyd STRAIN, Plaintiff-Appellant,
v.
PAYETTE SCHOOL DISTRICT NO. 371J; Warren E. McCain Middle
School; Richard Dillon, Defendants-Appellees.
 No. 96-35865.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted Dec. 4, 1997.
Decided Jan. 14, 1998.
 
 Before: GOODWIN, REAVLEY** and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Floyd Strain appeals the judgment on jury verdict in favor of the Payette School District No. 317J in his action for damages brought under 42 U.S.C. § 1983 and state law claims based on Idaho Code § 33-514 for breach of contract of employment. We affirm.
 
 FACTS AND PROCEDURAL BACKGROUND
 
 3
 Strain was initially hired under an annual contract for the 1989-90 school year, and was reemployed by the school district under a separate annual contract for the following year. His assignment was to teach special education and coach various middle school sports teams. Idaho Code § 33-514, dealing with evaluation and renewal procedures for "annual contract teachers," was incorporated into the terms of Strain's contract. See Gunter v. Board of Trustees, Pocatello School Dist. No. 25, 854 P.2d 253, 256 (Idaho 1993) (defining status of annual contract teacher).
 
 
 4
 Code § 33-514, covering "certificated employees who are not employed on a renewable contract," provides in relevant part: "When any such employee's work is found to be unsatisfactory a reasonable period of probation shall be established.... In all instances, the employee shall be duly notified in writing of he areas of work which are deficient, including the conditions of probation.... If the board of trustees has decided not to reemploy the certificated employee, then the notice must contain a statement of reasons for such decision and the employee shall, upon request, be given the opportunity for an informal review of such decision by the board of trustees."
 
 
 5
 During his employment, Strain was evaluated from time to time pursuant to § 33-514. Each evaluation used a standard form which specified various areas of performance under two different categories, "Professionalism" and "Classroom Teaching." Prior to his last evaluation, Strain had been found to meet or exceed district expectations in both "Professionalism" and "Classroom Teaching."
 
 
 6
 In his last evaluation, on March 7, 1991, under the category of "Professionalism," Strain was said not to meet District expectations in the areas of compliance with school policy, communication skills, and professional behavior, He was shown as meeting district expectations, but on the lower side, in the areas of staff relations, school-community relations, and mental and emotional attitudes. He was said to meet the district expectations in all other areas under that category. The evaluation form contained the comment that "Floyd continually follows his own dictates, disregarding school policy and procedures. He continually uses his position to further his private goals." Under the catagory of "Classroom Teaching," Strain was said to meet or somewhat exceed district expectations in all areas.
 
 
 7
 Just prior to this last evaluation, on January 31, 1991, Strain lad sent a letter on middle school letterhead containing the name and title of the principal to various school districts, seeking a political solution to problems regarding disadvantaged students' participation in interscholastic athletics. Because the letter was sent without the knowledge or consent of the principal, the principal sent Strain a letter terminating him as middle school track coach and threatening "to do everything in my power to have you terminated without pay for the remainder of this contract year."
 
 
 8
 Strain was not terminated during the 1990-91 school year, but on May 15, 1991, he was notified by letter pursuant to § 33-514 that his contract would not be renewed for the following school year. The letter stated that the reasons for non-renewal were that "the Board of Trustees would like to try a different employee in this position," who "would have a higher performance level and a personality more suited to our district's needs." However, the letter also stated that Strain "had satisfactory performance and met minumum standards."
 
 
 9
 Pursuant to § 33-514, Strain requested an informal review of this decision. At this review, held on June 17, 1991, the Board informed Strain of more specific reasons for non-renewal. The Board informed him that he did not go through the chain of command, flitted from topic to topic, violated the Idaho Code of Ethics for Teachers by mailing letters advocating personal views at school district expense, did not listen, had unsatisfactory behavior with peers, engaged in excessive self-promotion and was rumored to have used physical force with students. After the hearing the Board reaffirmed its decision not to renew Strain's employment.
 
 
 10
 In April: 1992, Strain filed in state court an action against the school district and various individuals, alleging breach of contract because the school district failed to place Strain on probation prior to non-renewal, which he said was required by § 33-514. The state trial court granted, in part, the district's motion for summary judgment, but held that a triable issue of fact existed as to Strain's entitlement to a period of probation prior to non-renewal and whether the district failed to provide him with adequate notice of the reasons for its decision not to reemploy him. (This order was issued in May, 1993, prior to the Idaho Supreme Court's decision in Brown v. Caldwell School Dist., which was issued two years later in June, 1995.)
 
 
 11
 Instead of going to trial in state court, Strain asked and was granted leave to amend his complaint. When he added a 42 U.S.C. § 1983 claim against the school superintendent, the district promptly removed the action to United Stated District Court for the District of Idaho which had federal question jurisdiction. Upon the school district's motion, the § 1983 claim was removed from the case and the district court proceded to trial.
 
 
 12
 After a three day trial, the jury found that the school district did not breach its contract with Strain, either by failing to offer him probation prior to nonrenewal or by failing to give him a list of sufficient reasons for non-renewal.
 
 
 13
 The district court denied Strain's post trial motions and Strain timely filed his Notice of Appeal. He appeals both the judgment on the verdict and the order denying his motion for a new
 
 STANDARD OF REVIEW
 
 14
 This court reviews de novo the district court's denial of a renewed motion for a judgment as a matter of law (formerly a judgment notwithstanding the verdict, or JNOV). Forrett v. Richardson, 112 F.3d 416, 419 (9th Cir.1997). Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's. Id.
 
 
 15
 The district court's decision to grant or deny a motion for a new trial pursuant to Federal Rule of Civil Procedure 59 is reviewed for abuse of discretion. Browning-Ferris Indus. v. Kelco Disposal, Inc., 492 U.S. 257, 278 (1989)
 
 DISCUSSION
 
 16
 It is well-settled that a post-trial motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) "may be entertained only if the movant has made a motion for a directed verdict at the close of all the evidence." Farley Transportation. Inc. v. Santa Fe Trail Transportation Co., 786 F.2d 1342, 1345 (9th Cir.1986) (internal quotations omitted). Although Rule 50(b) has been amended since Farley. the amendments do not affect the working of the Rule in this situation. See Patel v. Penman, 103 P.3d 968, 878 n. 9 (9th Cir.1996) This requirement is "strictly observed," and failure to make such a motion precludes an Appeal based on insufficiency of the evidence. Patel v. Penman, 103 F.3d 868, 878 (9th Cir.1996) (internal quotations omitted).
 
 
 17
 However, a request for a jury instruction directing the jury to return a verdict in favor of the moving party can constitute the equivalent of a motion for a directed verdict. Farley Transportation Co. v. Santa Fe Trail Transportation Co., 786 F.2d at 1347. Nevertheless, inasmuch as Rule 50(a) requires that a motion for a directed verdict state the specific grounds for granting the motion, a renewed motion for judgment as a matter of law based on a jury instruction may not go beyond the ground(s) raised in that instruction. See McCann v. Texas City Refining. Inc., 984 F.2d 667 (5th Cir.1993).
 
 
 18
 Strain did not make an actual motion for a directed verdict, but he did request that his Instruction No. 11 be given. That instruction reads: "The statement of reasons given by the Payette School District for not renewing Strain's contract was in violation of the requirements of Idaho law." Cited as authority for this instruction was Brown v. Caldwell School District No. 132, 898 P.2d 43 (Idaho 1995). While Strain failed to advise the district court that he was asking the court to treat the issue of the sufficiency of the statement of reasons for nonrenewal as a question of law, his instruction appears to have preserved his right to seek judgment as a matter of law with respect to this issue
 
 
 19
 There is no basis on which to find, however, that Strain preserved his right to file a renewed motion for judgment as a matter of law on on any other issue, including whether he was entitled to a period of probation before he could be non-renewed.
 
 
 20
 The only post--trial motion made by Strain was entitled "Plaintiff's Motion for New Trial," and was timely filed on December 15, 1996, nine days after judgment was entered on December 6, 1995. The motion stated that it was being made pursuant to Rule 59, and requested "entry of an order setting aside the jury's verdict in this matter and granting a new trial." While the motion argued that the jury's finding regarding the sufficiency of the stated reasons for non-renewal was "contrary to the weight of the evidence" (the standard for a Rule 59 motion), the motion also argued that this finding was "contrary ... to Idaho law," and that the stated reasons for non-renewal were insufficient "as a matter of law, of I.C. § 33-514."
 
 
 21
 Strain argued that his Requested Jury Instruction No. 11, dealing with the sufficiency of the stated reasons for non-renewal, essentially constituted a request for a directed verdict (thus preserving his right to so move).
 
 
 22
 In these somewhat confusing circumstances we have held that "nomenclature is not controlling, [and thus] a court must construe whether a motion, however styled, is appropriate for the relief requested." Bordallo v. Reyes, 763 F.2d 1098, 1101 (9th Cir.1985) (internal quotations omitted). See also Sacks v. Reynolds Securities, Inc., 593 F.2d 1234, 1239 (D.C.Cir.1978) ("[t]he liberality of the ... Federal Rules is such that erroneous nomenclature does not prevent the court from recognizing the true nature of a motion" (internal quotations omitted)).
 
 
 23
 We have also held that courts should read such motions together with supporting memorandum. See Roy v. Volkswagenwerk Aktiengelsellschaft, 781 F.2d 670 (9th Cir.1985) (where this court held that a motion was advanced with sufficient particularily when it was followed by "a later document" which was timely filed and contained the details of the argument). See also Lac du Flambeau Band of Lake Superior Chippewa Indians v. State of Wisconsin, 957 F.2d 515, 516-517 (7th Cir.1992) ("[a]n empty motion cannot reserve time to file an explanation after the ten days allowed ..., but a brief contemporaneous with the motion fulfils [sic] the requirement of Fed.R.Civ.P. 7(b)(1) that motion papers 'state with particularity the grounds' for the relief demanded").
 
 
 24
 As one court as noted in Registration Control Systems, Inc. v. Compusystems, Inc., 922 F.2d 805, 807-808 (Fed.Cir.1990), "[t]he purpose of the particularity requirement in Rule 7 is to afford notice of the grounds and prayer of the motion to both the court and to the opposing party, providing that party with a meaningful opportunity to respond and the court with enough information to process the motion correctly. Wright and Miller state that the issue is whether any party is prejudiced by a lack of particularity or 'whether the court can comprehend the basis for the motion and deal with it fairly.' 5 Wright & Miller, Federal Practice and Procedure § 1192, 42 (1990)."
 
 
 25
 Here, because the motion and its supporting memorandum were both timely filed, they should be read together and we will treat the effort as a request for a judgment as a matter of law, as well as a request for a new trial, with enough particularity as required by Rule 7. The school district was afforded a meaningful opportunity to respond to Strain's argument that he should be granted judgment as a matter of law on the issue of sufficiency of the stated reasons for non-renewal. Notably, in its argument to this court the school district does not complain that Rule 7 was not complied with, but only that Strain had failed to move for judgment as a matter of law. We note, however, that the school district's failure to raise the point in the district court does not affect its right to make the argument before this court. The particularity requirement is jurisdictional. See Registration Control Systems, Inc. v. Compusystems, Inc., 992 F.2d at 807.
 
 
 26
 Instead, the school district asserted that "the jury's verdict was consistent with ... Idaho law." The school district chose to argue (wrongly) that § 33-514 did not require school districts to provide reasons when the non-renewal was for other than performance-related reasons. The school district chose to assert, without citing authority, that "[i]n any event, the adequacy of the reasons was clearly a jury question...."
 
 
 27
 Unfortunately, neither party actually presented to the trial court the real question in this case: Is it judge work or jury work to decide whether the facts presented to the jury complied with Idaho statutory law in terminating a teacher's employment?
 
 
 28
 Because nobody squarely presented the real question to the trial court, the trial court submitted the sufficiency, under Idaho law, of the school board's notice to Strain as a special interrogatory, to the form of which the parties appear to have agreed. Thus the sufficiency question which arguably may have been as much a question of law on agreed facts as a question of fact for the jury, went to the jury, more or less as a holistic question of "what did he know and when did he know it."
 
 
 29
 Strain may be correct in contending in this court that the school district's formal statement of reasons for his non-renewal as stated.in the notice of non-renewal did not satisfy the holding of Brown v. Caldwell School District No. 132, 898 P.2d 43 (Idaho 1995). The school district contends that the way the case was tried, the jury was entitled to hear and examine all the evidence about what Strain was told by his superiors, and that he knew very well why he was not being selected for retention for another year. the school district further argues that probation does not apply to persons who are "not renewed" because of their extracurricular activities, but applies only to those "not renewed" for deficient classroom performance, a matter the state legislature may have thought remediable by a probationary period following a warning notice. We do not undertake to resolve this interesting question of purely Idaho school law, because it has not been preserved for appeal.
 
 
 30
 An appellant has a duty to provide a reviewing court with reasons, and with a record that supports those reasons, for finding error in a jury trial. We do not have a roving commission to search for error or to go back to the trial court and try to construct a record which we can probe for error.
 
 
 31
 The record prepared for our use contains a clerk's minute entry that recites, inter alia, "Formal jury instruction conference held on the record ... [Objections to numbered exhibits ruled upon] ... Objections to instruction # 10 & 12 OVERRULED.... Counsel also indicated that there were no objections to the post argument instruction to be given to the jury." There is no record of an objection to the court's decision not to give Plaintiff's requested Instruction No. 11. If the appellant thinks we should.review the transcript of the Rule 51 conference mentioned in the minutes, the appellant should have made that transcript a part of the record on appeal. It is too late to supply the missing documentation after an appeal is briefed and argued.
 
 
 32
 It is unlikely that any further light would be shed on this case by sending it back to the district court for another trial. It clearly was not an abuse of discretion to retain this state statutory case in the district court after the parties had labored somewhat recklessly over a period of several years to get it to issue But, matters entirely controlled by local statutes ordinarily are better left in the state court where the local appellate system can write law for the state rather than to have remaining state law questions go to judgment in federal court and then be appealed to federal courts whose opinions about the meaning of local statute are not binding on the local courts. It if true that retaining such non-federal cases in federal court has certain advantages of dispatch and finality to the litigants after the federal question has evaporated, but in this case finality turned out not as the plaintiff hoped for
 
 
 33
 The district court likewise did not abuse its discretion in failing to grant a new trial. On the more arcane question of the application of § 33-514, the parties let the case go to the jury on a series of special questions: Question No. 1: Did the Payette School District breach its contract with Plaintiff by failing to place him on probation before deciding not to renew his contract? The jury answered "NO." Had the jury answered yes, it would have gone on to Questions No. 2 and No. 3. (damages for want of probation, before and after trial). The jury went on to Question No.4: Did the Payette School District breach its contract with Plaintiff by failing to give him a sufficient list of the areas of his work that were deficient? The jury answered "NO."
 
 
 34
 We find no reason to disagree with the jury on its answers to the questions presented. The questions conflated questions of law and questions of fact in a manner that must have been frustrating for lawyers who care about such matters, but which gave the jury an easy way to reach a verdict. The questions appear to have been consented to, as we do not imply objections from a silent record. We express no opinion on how Idaho courts should present questions of the kind raised by the facts in this case, as that matter is best reserved for the those courts.
 
 Affirmed
 
 
 **
 Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3