## McCABE & STEEN CONSTRUCTION COMPANY *v.* WILSON.

### ERROR TO THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 155. Argued March 5, 6; 1908.—Decided April 6, 1908.

Defendant who introduces testimony after the demurrer to plaintiff's evidence has been overruled waives any error to the ruling.

Where the cause of action is against the members of a copartnership who afterwards incorporate their business, themselves taking practically all the stock and continuing without changing their relations with employés, the fact that the suit is commenced against the corporation was held under the circumstances of this case, and in view of the fact that no testimony was offered, to be within the provisions of the Oklahoma statute, 146, art. 8, c. 66, Wilson's Ann. Stat., requiring the court to disregard, and not reverse for, defects of pleading or proceedings not affecting the substantial rights of the parties.

Where several instructions are asked and refused, exceptions must be taken separately and not as an entirety.

One employed as a fireman on an engine of a construction train *held*, under the circumstances of this case, not to be the fellow-servant of the foreman of the gang constructing the bridge which fell and caused the accident.

It is the duty of the employer to provide a suitable and safe place for the employés to work and they are not charged with any responsibility in regard thereto, and while the employer is relieved if he does everything that prudence requires in that respect, it is largely a question of fact and this court will not, in the absence of convincing testimony, set aside the verdict of a jury approved as was the verdict in this case by the trial and Supreme courts of the Territory, especially where the accident was the result of recurring conditions.

A fireman, who, under the circumstances of this case, remains at his regular post where his ordinary duty calls him, is not guilty of contributory negligence because he does not avail himself of permission to occupy a different and, perhaps, safer place.

17 Oklahoma, 355, affirmed.

ON June 9, 1902, Wilson, the defendant in error, was injured by the giving way of a railroad bridge across the Canadian River in the Territory of Oklahoma. The bridge was on a new line of railroad, which was being constructed from Ok-

lahoma City to Quanah, Texas. The petition, filed October 18, 1902, in the District Court of the Third Judicial District, sitting in and for the county of Oklahoma, charged that the defendant, now plaintiff in error, was a subcontractor and constructing a portion of the railroad, including therein the crossing of the Canadian River; that Wilson was a locomotive fireman employed by the defendant. The circumstances of the injury were stated in the petition and negligence on the part of the defendant was averred. A trial resulted in a verdict and judgment in favor of the plaintiff for $5,500. This judgment was affirmed by the Supreme Court of the Territory (17 Oklahoma, 355), and thence brought here by writ of error.

*Mr. Arthur G. Moseley,* with whom *Mr. Louis B. Eppstein* was on the brief, for plaintiff in error.

*Mr. James R. Keaton,* with whom *Mr. John W. Shartel, Mr. Frank Wells* and *Mr. John H. Wright* were on the brief, for defendant in error.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

When the plaintiff rested the court overruled a demurrer to the evidence. This ruling, however, cannot avail the defendant, whatever the defects then in the case, for thereafter it proceeded to introduce testimony in its own behalf, and this waived any supposed error. *Accident Insurance Company* v. *Crandal,* 120 U. S. 529, 530; *Robertson* v. *Perkins,* 129 U. S. 233, 236; *Bogk* v. *Gassert,* 149 U. S. 17, 23; *Campbell* v. *Haverhill,* 155 U. S. 610.

The petition averred that one Pratt was defendant's superintendent of construction and one Fallahey foreman of the gang engaged in work on the bridge, and that the plaintiff was employed by the defendant through its general superintendent. The answer, in addition to certain special defenses, was

an unverified general denial, and the court held that under the pleadings the defendant was estopped from showing that the foreman of the bridge gang and the superintendent of construction were not in its employ. This ruling was based upon par. 3986 of the Oklahoma General Statutes of 1893, c. 66, § 108, which provides that "in all actions allegations . . . of any appointment or authority . . . shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney." Defendant also sought to prove that plaintiff was not in its employ; that it in fact did not exist at the time of the accident; that the contract for the construction work was taken by a partnership, McCabe & Steen. The answer of defendant alleged that the injury to plaintiff "was due to one of the risks assumed by the plaintiff in his contract of employment with this defendant."

. The general denial in the answer as originally filed was in terms of "the allegations contained in the petition in manner and form as therein set forth." During the progress of the trial the defendant asked leave to amend by striking out the words "in manner and form as therein set forth," to which application the plaintiff objected, saying:

"As far as the general denial being sufficient to permit the defendant, admitting that it is the proper defendant, to raise further issues as far as it not being guilty of any negligence, admitting that it was the defendant and was doing the contracting work there, why we don't care anything about it; but we do object to their being permitted to amend their answer in any way so as to raise the issue that this defendant is not the defendant with whom the plaintiff contracted and who was doing this work."

The court thereupon announced its decision to neither permit nor deny the defendant leave to amend at that time, saying:

"The COURT: We will go ahead now and treat this answer as a general denial at this time, and will reserve my ruling on your motion until I see further; I will fix the terms later."

Thereafter the question came up again, and the record shows these facts:

"The COURT: The defendant will be permitted to amend the general denial by striking out those words (the words heretofore referred to) by the payment of half of the costs of court to this date, except the witnesses of the plaintiff—the fees; that is, provided, however, that if a continuance by reason of this amendment is taken by the plaintiff, the defendant shall be taxed with all the costs, unless the court should continue it on account of some showing made by the plaintiff, then of course the costs occasioned by the amendment would follow.

"Mr. KEATON: Counsel for plaintiff here states that if it is permitted to show by testimony that the McCabe & Steen Construction Company were not building this road and not building the bridge, then the plaintiff will have to make a showing and ask for a continuance of the case in order to re-form the pleadings.

"Mr. MOSELEY: Well, we have not offered that testimony yet.

"The COURT: You gentlemen have heard my statement that if a continuance should be made necessary, then all the costs will follow.

"Whereupon the defendant amends its answer by striking out certain words, the same being 'in manner and form as therein set forth,' which appeared between the word 'petition' and the word 'and' in the third line of first paragraph of said answer."

It will be observed that counsel for the plaintiff stated that he had not yet offered testimony to show that the McCabe & Steen Construction Company was not building the road and the bridge, and the record shows that thereafter there was no testimony in any form offered to establish that fact. Now whatever might have been competent testimony under the answer as amended, it appears by the statement of counsel that no testimony respecting the matter had been offered, and the record shows that none was thereafter offered. It must

be stated, however, that prior to the ruling just quoted it had been shown that within six weeks after the injury, and while the work of construction was still in progress, the partnership conveyed all its interest to the corporation, the two members of the partnership of McCabe & Steen taking 96 per cent of the corporate stock. This transfer was of so little significance that it was unknown to its counsel at the time he filed the answer, and from his statement he evidently did not care to press any defense on that ground. The Oklahoma statute provides: "The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." Section 146, art. 8, c. 66, Wilson's Ann. Stat.

With reference to these several matters thus grouped together we are of opinion that the Oklahoma statute we have just quoted sufficiently answers any claim of error. The litigation proceeded upon the theory that the corporation was the real party in interest, and while the partnership and the corporation were not identical, yet the partners were substantially the corporation, and the change in organization did not materially affect the rights of the plaintiff. Evidently, for business convenience, the partners concluded to organize as a corporation, and yet they took the bulk of the stock in their own names. They were practically the owners, and it does not appear that there was any change in the manner of doing business or in the relations of the employer to the employés. To hold, especially after this admission of counsel and his failure to offer any further testimony on the subject, that the substantial rights of the plaintiff were affected by any of these matters would be sacrificing substance to form. The objections were properly disregarded by the Oklahoma courts, both trial and supreme.

While the defendant asked several instructions the exception taken was not to the ruling on each instruction separately, but to them as an entirety. This plainly was insufficient.

*Fullenwider* v. *Ewing*, 25 Kansas, 69; *Bailey* v. *Dodge*, 28 Kansas, 72; *Fleming* v. *Latham*, 48 Kansas, 773.

There remain for consideration these matters: one, the contention that the plaintiff was a fellow-servant with the foreman of the gang at work on the bridge and the superintendent of construction; another, the question of negligence on the part of the defendant; and a third, contributory negligence. With reference to the first, it must be borne in mind that the plaintiff was a fireman employed on a locomotive, and his work was in a separate department from that of the employés engaged in the construction of the bridge. This is not a case for the application of the doctrine of fellow-servant. It would be carrying that doctrine too far to hold that one employed as a fireman and engaged in the movement of a train was a fellow-servant with the superintendent of construction and the foreman of a bridge gang, both of whom were present and engaged in supervising and directing the work on the bridge. These latter employés represented the principal in an entirely different line of employment from that in which the plaintiff was engaged, were discharging a positive duty of the master to provide a safe and suitable place and structures in and upon which its employés were to do their work—*Union Pacific Railway Co.* v. *O'Brien*, 161 U. S. 451, and cases cited in the opinion—and in discharging that positive duty they and not he were the representatives of the defendant. Their action, so far as that work was concerned, was the action of the defendant.

With reference to the second question, that of negligence on the part of the defendant, it must be premised that this is largely a question of fact, and a question of fact is submitted to the decision of a jury. Notwithstanding the able argument of counsel for defendant in endeavoring to show that the defendant did everything that prudence required for the purpose of making the bridge safe, we are not satisfied that the testimony is so convincing in this respect as to justify us in setting aside the verdict of the jury, approved as it was by the trial

and Supreme Courts of Oklahoma. There is, of course, resting upon the employer the duty of providing a suitable and safe place and structures in and upon which its employés are called to do their work, and this plaintiff was charged with no duty in respect thereto.

A full statement of the testimony would unnecessarily prolong this opinion, and a brief outline must suffice. The bridge was a pile bridge, the piles having been, as claimed, driven down to solid rock. This rock substratum sloped from the north to the south side of the river, the first bent striking the rock at eight or ten feet. At the place where the bridge sank the depth to the rock was eighteen feet. Above the rock was quicksand, and the piles were driven through it. The bridge was originally constructed some weeks before, but during high water a portion of it had washed out. It was rebuilt upon the same plan and with apparently no further protection than when originally constructed. At the time of the injury there was again high water, and that high water made a roaring torrent of the flowing stream. When the train upon which the plaintiff was fireman came to the river it was found that upon the bridge there had been placed a loaded flat car. Disengaging itself from the balance of the train, the locomotive moved on to the bridge and pulled that car off. As it did so there was a slight subsidence at the place where the bridge finally gave way. So the engine returned to the north bank of the river, while the gang of employés, under the direction of the foreman and the superintendent of construction, proceeded to place a false span underneath the bridge at the point of subsidence, and after awhile notified the train employés that the bridge was safe. Thereupon the engine moved slowly on to the bridge, and when it got to the place where there had been a prior subsidence the bridge sank so as to drop the engine into the river, and in that way the plaintiff was injured. Now it appears that by actual experience the bridge as originally constructed gave way in time of high water, and yet was rebuilt, without change of plan and without adding

further protection. When the high water returned, as it did at the time of the injury, there was again a giving way of the bridge. From this general outline of the case (filled, of course, more in detail by the testimony as to the circumstances of the work and the injury) it is apparent that there was a question whether the defendant had made suitable provision for securing a safe structure upon which the trains should pass; and upon a review of all the testimony we do not feel that we are justified in disturbing the verdict, approved as it was by the Oklahoma courts.

Thirdly, it is insisted that the plaintiff was guilty of contributory negligence, in that when the engine moved on to the bridge, at the time of the injury, the engineer said to him that he need not stay on the engine, but might go back on the train. But his place of work was in the engine, the same as that of the engineer, and because he did not avail himself of the suggestion and leave that place it can hardly be said that he was guilty of contributory negligence. He stayed at his regular place of work and where his ordinary duty called him to be, and it would be a harsh rule to hold that a man so doing was guilty of contributory negligence, because he did not avail himself of a permission to occupy a different and perhaps a safer place; especially as both the engineer and himself were advised by the construction force that the bridge was safe.

These are all the matters that call for notice. We find no error in the rulings of the Supreme Court of Oklahoma, and its judgment is

*Affirmed.*